IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER L. CASH, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 19-1553 |
| OFFICER SCOTT BOBAK and ANDREW MERCER, | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**I.  Recommendation**

It is respectfully recommended that Defendant Mercer's motion for summary judgment (ECF No. 45) be granted and Defendant Bobak's motion for summary judgment (ECF No. 48) be denied.

**II.  Report**

  A.  Procedural History

In this civil rights lawsuit, pro se Plaintiff Christopher L. Cash ("Cash") alleges a Fourth Amendment unreasonable use of force claim against Allegheny County Sheriff Deputy Scott Bobak ("Deputy Bobak") and the City of Pittsburgh Police Officer Andrew Mercer ("Officer Mercer") (collectively, "Defendants").[1] (ECF No. 13 ("Am. Compl.").) After the close of discovery, Defendants filed the pending motions for summary judgment which have been fully briefed (ECF Nos. 43, 44, 46, 47, 49, 76, 77, 78).

---

[1] In his Amended Complaint, Cash erroneously labeled his claim as arising under the Eighth Amendment. After Defendants moved for summary judgment, Cash requested an amendment to clarify that he was alleging violations of his Fourth Amendment rights and also to add certain facts. In their summary judgment motions, both Defendants construe Cash's claim as an alleged Fourth Amendment violation. Further, Cash incorporated the facts he wished to add by an amendment into the declaration he filed in opposition to the pending motions. Thus, an amendment was unnecessary. (ECF No. 82.)

B.     Factual Background[2]

1. The Incident

On February 23, 2018, Deputy Bobak pulled over a private vehicle with three occupants because it had entered the travel lane restricted for buses and emergency vehicles. (Bobak SOF ¶ 1; Mercer ¶ 4.) Cash was a passenger in the back seat of this vehicle. (Bobak SOF ¶ 1.) Officer Mercer and other City of Pittsburgh Police officers arrived on the scene to assist Deputy Bobak. (Bobak SOF ¶ 2; Mercer SOF ¶¶ 3, 4, 5.)

Because the driver of the vehicle had outstanding arrest warrants and his driver's license was suspended, he was arrested and placed into an Allegheny County police wagon. (Bobak SOF ¶ 3; Mercer SOF ¶ 8; ECF No. 43-3 at 8). As the driver was being arrested, Officer Mercer advised Cash to remain seated. (Mercer SOF ¶ 7.) Officer Mercer noticed that Cash's left arm was in a sling. (ECF No. 46-2 at 3.) Cash stated that he was wearing a sling because he had torn his rotator cuff. (*Id.*)

The vehicle had to be towed from the scene because the remaining occupants did not have valid driver's licenses. Deputy Bobak asked them to step out of the vehicle and move to the sidewalk. (ECF Nos. 43-3 at 8.) Deputy Bobak directed Cash to exit the vehicle first. (Bobak SOF

---

[2] The facts of record are stated in the light most favorable to Cash. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In large measure, they are taken from Defendants' concise statements of fact. (ECF No. 44 ("Bobak SOF") & ECF No. 46 ("Mercer SOF"). Although Cash did not respond to either Defendant's statement of facts in accordance with the Court's Local Rules, W.D. Pa. LCvR 56.C.1, he did file a sworn declaration in opposition to their motions in which he challenges certain facts. (ECF No. 76 ("Cash Decl.").). The facts that Cash did not challenge in his declaration are deemed admitted, *see* W.D. Pa. LCvR 56.E, but, because Cash is proceeding *pro se*, the Court has independently reviewed the summary judgment record and, where necessary, cited directly to the record. Additionally, because Cash has filed a sworn Amended Complaint, the Court treats it "as an affidavit in opposition to summary judgment." *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985).

¶ 4.) Officer Mercer noted that Cash would not make eye contact with him and that he was breathing heavily and sweating. (Mercer SOF ¶ 9.) Because Cash could not reach the seatbelt to detach it with his right hand, Officer Mercer asked him if he needed assistance to which Cash responded in the affirmative. (ECF No. 46-2 at 3.) Officer Mercer then reached into the vehicle and unbuckled Cash's seat belt so that he could exit. (Mercer SOF ¶ 10.)

As Cash emerged from the vehicle, Deputy Bobak also observed that Cash's left arm was in a sling. Cash told him that he had injured it. (Bobak SOF ¶ 6.) According to Deputy Bobak, he told Cash that he would pat Cash down for weapons while he checked Cash's personal information. (ECF No. 43-3 at 8.) According to Deputy Bobak, Cash told him that he had no weapons but then became evasive, pulled his body away from Deputy Bobak, and with his right hand, started to reach into his jacket toward the left side of his chest. (Bobak SOF ¶¶ 8, 9.) Deputy Bobak asserts that when he tried to place Cash's right hand on the hood of the vehicle, he observed that Cash had a firearm concealed in the sling and Cash turned from him and ran. (*Id.* ¶ 10, 11.) Deputy Bobak then grabbed Cash's jacket and used his foot to sweep Cash's right leg. (*Id.* ¶¶ 12, 13.) As a result, Cash fell forward and landed on the ground with both arms and the firearm under him. (*Id.* ¶ 14.)

Officer Mercer's investigative report provides a different perspective starting at the point when Cash exited the vehicle:

> Cash immediately started sliding out and Deputy Bobak asked Cash to face the vehicle. Cash turned towards the vehicle once then began to blade his body and turn away from the vehicle again while reaching into his jacket with his right hand. As Deputy Bobak grabbed Cash's arm to place it on the [vehicle,] [Deputy Bobak] observed a firearm in Cash's left arm sling and tried to grab [Cash's] arm. Simultaneously Cash began to push off Deputy Bobak and take off running into Deputy Bobak and [Officer Mercer]. Cash was spinning and trying to run when [Officer Mercer] grabbed his right arm stating "Stop, get on the ground" and began to pull him toward the ground in an arm bar. Simultaneously [another officer] pushed [Cash] in the back and Deputy Bobak began to perform a tackle with both

> arms wrapped around [Cash's] body. [Officer Mercer] also heard someone yelling "Gun" as all this was going on and . . . when [everyone was] . . . going to the ground.

(ECF No. 46-2 at 3.)

Cash disputes Defendants' version of these events. He claims that when he exited the vehicle, and before Deputy Bobak observed a firearm, Deputy Bobak requested consent to search him but he refused. (Cash Decl. ¶¶ 6, 7.) According to Cash, Deputy Bobak then forcefully placed his right arm atop the vehicle. (*Id.* ¶ 8.) Cash repeated that he did not consent to a search, but Deputy Bobak slammed his "face first to the ground where he landed on his injured and immobile left arm." (*Id.* ¶¶ 9, 10; Am. Compl. at 2.)

According to Defendants, once Cash was on the ground, Deputy Bobak ordered him three times to put his hands behind his back but Cash refused to comply. (Bobak SOF ¶¶ 16, 17.) Deputy Bobak "believed" that Cash still had the firearm underneath his body. (ECF No. 43-3 at 8.) He claims that he struck Cash two times in the face with a closed fist. (Bobak SOF ¶ 19.) Cash asserts, however, that Deputy Bobak sat on top of him and "began closed fist punching" him (Cash Decl. ¶ 11), including "several times in the face." (Am. Compl. at 2.)

Officer Mercer asserts that he feared that Cash was either positioned on top of the firearm or was in the process of retrieving it from underneath his body. (Mercer ¶ SOF 16.) As a result, he struck Cash in the "head area" with his knee three to four times to get Cash to comply. (*Id.* ¶ 17.) According to Cash, Officer Mercer delivered about six knee strikes to his head and face. (Cash Decl. ¶ 13; Am. Compl. at 2.)

Deputy Bobak then grasped Cash's right hand and forced it behind him, but his left hand and the firearm remained under Cash. (Bobak ¶ 20.) Officer Mercer assisted Deputy Bobak in forcibly placing Cash's left hand behind his back. (*Id.* ¶ 21.)

Once Deputy Bobak and Officer Mercer handcuffed Cash, another officer retrieved the firearm from the ground where the struggle with Cash had occurred. (Bobak SOF ¶¶ 20, 21; 23; Mercer SOF 17, 19.) Deputy Bobak then searched Cash for any additional weapons and found twenty bundles of suspected heroin and one knotted baggy of suspected crack cocaine from Cash's jacket. (Bobak SOF ¶ 24.) Deputy Bobak also confirmed that Cash had no outstanding warrants. (ECF No. 43-3 at 8.)

In the "Use of Force" report that he filed after the incident, Deputy Bobak reported that:

> Cash kept his hands tucked under his body then pushed off of the ground with his legs exposing his face and the right side of his body (Right hand was still tucked in by left part of his chest where Firearm was seen). Cash was still holding his left arm under his body, he refused to bring arm to his back, holding it under his body.

(Bobak SOF ¶¶ 64, 65.) Deputy Bobak's superiors concluded that the use of force was justified and that it appeared reasonable and was consistent with their policy. (*Id.* ¶¶ 67, 68.)

Similarly, Officer Mercer filed a "Subject Resistance Report" which was reviewed by his supervisor. (ECF No. 46-2 at 5–6.) In approving Officer Mercer's use of force, his supervisor noted that:

> [Officer] Mercer was assisting a Deputy on a traffic stop that involved a firearm. The actor refused to comply with officers and attempted to flee. After failing to flee, the actor made numerous attempts to retrieve a firearm that he had concealed on his person while fighting with 3 officers. [Officer] Mercer delivered 3 knee strikes to the actor's head area fearing that actor was trying to gain control of the firearm. [Officer] Mercer's actions are considered deadly force, but were needed when the actor was trying to gain control of his firearm. [Officer] Mercer's force appears appropriate and justified.

(ECF No. 46-2 at 6.)

2. Cash's Injuries

Cash was transported to the Allegheny County Jail but due to his injuries, the jail refused to admit him without medical clearance. (Bobak SOF ¶ 27.) Deputy Bobak then took Cash to a

5

hospital emergency room where his wounds were treated and he was checked for possible injuries to his head, neck, and shoulder. (*Id.* ¶¶ 28, 29; ECF No. 43-6 at 12, 16.) He was diagnosed with multiple facial abrasions, a head injury to the right posterior skull, and an injury to the left upper extremity. (ECF No. 43-7 at 68.) CT scans of Cash's head and cervical spine were unremarkable and showed no evidence of acute pathology and x-rays of his shoulder were also negative for an obvious fracture dislocation. (*Id.*; ECF No. 43-6 at 12, 16.) The incision site from Cash's previous surgery on his left shoulder had opened but it was bound back together with Steri Strips. (Bobak SOF ¶ 32; ECF No. 43-6 at 12, 16.) Cash was discharged but advised to return for increased pain, fever, vomiting, bleeding, shortness of breath, or feeling worse in any way. (ECF No. 43-6 at 12–13.)

Deputy Bobak claims that as he was transporting Cash back to the Allegheny County Jail, Cash told Deputy Bobak that the only reason he ran was that he had just gotten out of prison and the arrest would affect his parole. (Bobak SOF ¶ 34.)

The day after his arrest, on February 24, 2018, Cash received treatment at Allegheny County Jail for a swollen left eye and possible cut left eyelid. (*Id.* ¶ 38.) Later, on March 21, 2018, he requested medical treatment at the jail for upper back pain and complained of blurry vision in his left eye. (*Id.* ¶ 39.)

Cash was later released on bail but was incarcerated at the Allegheny County Jail several times thereafter. (*Id.* ¶¶ 41, 42, 44, 45.) Jail records reflect that on September 18, 2018, Cash reported to the intake staff that he had sustained a concussion during the February traffic stop. (*Id.* ¶ 43; ECF No. 43-7 at 66) Later, on November 20, 2019, he sought treatment for headaches based on the head injury he had sustained during the same traffic stop. (Bobak SOF ¶ 48.) He told the

medical staff that he had obtained no follow-up treatment for his head injury but wanted to be sent back to the hospital for CT scans. (*Id.* ¶ 49; ECF No. 43-7 at 68.)

The medical staff told Cash that "he was currently asymptomatic of any type of acute issues with the exception that he was having occasional headaches in the posterior skull and top of his skull area." (ECF No. 43-7 at 68) The medical staff's assessment was that Cash was "probably" having "tension headaches" but they could not supply him with medication for headaches. (*Id.*) Although Cash was not satisfied with their response, the medical staff found no "symptoms which would warrant . . . sending [Cash] out [to the hospital] . . . for another CT scan or MRI of the brain." (*Id.*)

### 3. The Charges Against Cash

As a result of the February 23, 2018 incident, Cash was charged with possession of a firearm by a prohibited person, carrying a concealed firearm without a license, resisting arrest, possession of controlled substances, and possession with intent to deliver. (*Id.* ¶ 35.)

In the ensuing state court criminal proceeding, Cash moved, unsuccessfully, to suppress the evidence recovered from his person. (ECF No. 43-9.) In his suppression motion, Cash argued that the traffic stop concluded once the driver of the vehicle had been placed under arrest and Deputy Bobak had determined that the vehicle had to be towed. (*Id.* ¶ 3, 6.) Cash maintained that because Deputy Bobak had executed the traffic stop for a vehicle code violation only, he had no other reasons to detain the passengers in the vehicle after the traffic stop. (*Id.* ¶ 10.) This was so, Cash argued, because the search of the arrested driver did not lead to the recovery of contraband or any other evidence of criminal activity, nor was there any conduct on the part of the passengers during the traffic stop that would have caused Deputy Bobak to reasonably suspect criminal activity. (*Id.* ¶¶ 5, 9.)

According to Cash, Deputy Bobak's act of ordering Cash to the sidewalk so that he could pat him down and check his personal information amounted to an unlawful investigative detention and seizure. (*Id.* ¶ 10.) Because this was not supported by a reasonable suspicion of criminal activity, Cash sought to suppress all evidence seized as result of that detention and subsequent search. (*Id.* ¶¶ 21, 22.)

After his motion to suppress was denied, Cash pleaded guilty to possession of a firearm by a prohibited person, resisting arrest, and possession of controlled substances. (Bobak SOF ¶¶ 55, 56.) Cash later filed a *pro se* petition for post-conviction collateral relief ("PCRA") claiming he was ineffectively represented by counsel because counsel failed to appeal the denial of his suppression motion. (*Id.* ¶ 57.) Cash's PCRA petition remains pending. (Mercer SOF ¶ 25.)

C.   Standard of Review

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence showing a lack of genuine triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue of material fact that

precludes summary judgment. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court must view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

That said, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

"[P]ro se litigants are held to a lesser pleading standard than other parties." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). "A document filed pro se is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established.").

D.   Discussion

Section 1983 provides a private citizen with the right to bring an action against any person who under color of state law deprives him of a right or privilege secured by the Constitution of the United States. 42 U.S.C. § 1983. This statute does not create substantive rights but instead

"provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). A § 1983 plaintiff "must establish that []he was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).[3]

Cash's claim is based upon the excessive use of force by the Deputy Bobak and Officer Mercer. Section 1983 excessive force claims against police officers are "analyzed under the Fourth Amendment and its reasonableness standard." *Mellott v. Heemer*, 161 F.3d 117, 121 (3d Cir. 1998) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

In seeking summary judgment, both Defendants argue that (1) Cash's claim is precluded by the favorable termination requirement of *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) the record reflects that no excessive force was used; and (3) they are entitled to qualified immunity. Each of these arguments will be addressed in turn.

   1. Cash's claim is not barred under *Heck*

In *Heck*, the United States Supreme Court held that where if a judgment in favor of a plaintiff in a § 1983 action would imply the invalidity of a prior conviction, the complaint must be dismissed unless the plaintiff can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, [or] declared invalid by a state tribunal authorized to make such determination …." *Heck*, 512 U.S. at 486–87. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is *not* cognizable under § 1983." 512 U.S. at 487 (emphasis in original).

---

[3] Defendants do not dispute that they acted under color of state law.

The charges against Cash included possession of a firearm by a prohibited person in violation of 18 P.S. §6105 §§A1; carrying a concealed firearm without a license, 18 P.S. §6106(a)(1); resisting arrest in violation of 18 P.S. §5104; possession of controlled substances, 35 P.S. §780-113 §§(A)(16); and possession with intent to deliver 35 P.S. §780-113 §§(A)(30). (ECF No. 43-3 at 9–15.) After his motion to suppress evidence was denied by the trial court, he pleaded guilty to possession of a firearm by a prohibited person, resisting arrest and possession of controlled substances. (ECF No. 43-5 at 26–27.) Cash subsequently filed a *pro se* PCRA in which he claimed that he was ineffectively represented by his counsel because counsel failed to appeal from the denial of his suppression motion. (ECF No. 43-8.) According to the evidence of record, Cash's PCRA appeal remains pending.

Thus, the question to be addressed in this analysis is whether his excessive force claim "necessarily impl[ies] the invalidity of [his] conviction[s]." *Heck*, 512 U.S. at 487. *See also Gibson v. Superintendent,* 411 F.3d 427, 447–49 (3d Cir. 2005) (whether *Heck* applies to a Fourth Amendment claim requires a case-by-case inquiry). If so, his claim must be dismissed.

The sole claim asserted by Cash in this lawsuit is that Defendants used excessive force. A successful prosecution of his excessive force claim would not render his guilty plea or sentence for possession of a firearm or drug possession invalid. *Garrison v. Porch*, 376 F. App'x 274, 277–78 (3d Cir. 2010.) With respect to his guilty plea for resisting arrest, Cash's excessive force claim is not necessarily barred under *Heck* unless his "specific factual allegations . . . are necessarily inconsistent with the validity of the conviction." *Jacobs v. Bayha*, 616 F. App'x 507, 513–14 (3d Cir. 2015) (citing *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006)).

In *Nelson v. Jashurek*, the plaintiff alleged that an officer tried to arrest him for violating the conditions of his parole "but he disobeyed [the officer's] orders to halt and instead ran away."

11

109 F.3d 142, 143–44. (3d Cir. 1997). Once the officer caught up to the plaintiff, a struggle ensued. *Id.* ¶ 144. The plaintiff claimed that the officer used excessive force to subdue him. He was later convicted in state court of resisting arrest. *Id.* Under Pennsylvania law, in order to convict the plaintiff, the jury had to find that the officer involved "was justified in using 'substantial force.'" *Id.* at 145.

The Third Circuit held that the plaintiff's claim was not barred under *Heck* because "the fact that [the officer] was justified in using 'substantial force' to arrest [the plaintiff] does not mean that he was justified in using an excessive amount of force and thus does not mean that his actions in effectuating the arrest necessarily were objectively unreasonable." *Id.* Because the plaintiff in *Nelson* had alleged that the officer "effectuated a lawful arrest in an unlawful manner," the Third Circuit did "not see why a judgment in [the plaintiff's] favor would throw the validity of his conviction [for resisting arrest] into doubt." *Id.* at 145–46.

Similarly, in *Lora-Pena v. F.B.I.*, the Third Circuit held that the plaintiff's "convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his own unlawful actions." 529 F.3d 503, 506 (3d Cir. 2008). Simply put, a finding here that Defendants used excessive substantial force would not imply that the arrest was unlawful. "[A] reasonable juror, considering the totality of the circumstances, could find that the arrestee resisted arrest, but was still subjected to an unreasonably excessive level of force by the police officer in response." *Nelson*, 109 F.3d at 146.

Therefore, Cash's excessive force claim is not barred by *Heck.*

2. Issues of fact exist regarding whether Defendants used excessive force

In determining whether Cash's rights were violated by Defendants' use of force, "the

inquiry is whether [Defendants'] actions were objectively reasonable in light of the facts and circumstances confronting [them], without regard to [their] underlying intent or motivations." *Brown v. Rinehart*, 325 F. App'x 47, 50 (3d Cir. 2009) (citing *Graham*, 490 U.S. at 397).

The Third Circuit has explained that although "[t]he reasonableness of the use of force is normally an issue for the jury," *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir.2004), "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004).

The factors considered in undertaking this inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Third Circuit has also instructed district courts to "assess the physical injury to the plaintiff, 'the possibility that the person[] subject to the police action [is himself] violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

There are a number of facts in dispute regarding the incident itself. Defendants maintain that the amount of force they used was reasonable because Cash possessed a gun and resisted arrest. But after resolving all factual disputes in Cash's favor and considering the applicable factors in *Graham*, 490 U.S. at 396, and *Sharrar*, 128 F.3d at 822, the Court cannot conclude that Defendants' actions were objectively reasonable as a matter of law.

The vehicle in which Cash was riding was stopped for a traffic violation. While Officer Mercer states that Cash would not make eye contact and was breathing heavily and sweating, there was no indication that Cash posed an immediate safety threat upon exiting the vehicle. Deputy Bobak asserts that Cash became evasive when asked if he had any weapons, pulled his body away and began reaching into his jacket towards the left side of his chest. He further indicates that when he tried to place Cash's right hand on the hood of the vehicle, he observed a firearm concealed in the sling and Cash turned and began to run. He then grabbed Cash's jacket, used his foot to sweep Cash's right leg and Cash fell to the ground with both arms and the firearm beneath him. Officer Mercer's report also indicates that Cash attempted to push off Deputy Bobak and tried to run.

While it is undisputed that a firearm was recovered, whether it was observed by Deputy Bobak *before* the use of force began is disputed. Officer Mercer's investigative report reflects that he did not observe a firearm; rather, he only heard someone shout "gun" *after* the struggle had ensued. According to Cash's version of the events, after he refused to consent to a search and *before* Deputy Bobak observed a firearm, Deputy Bobak slammed him on the ground and began punching him and Officer Mercer started striking him in the head with his knee. Defendants contend that Cash was actively resisting arrest in that he kept his left arm underneath him, although Cash's injured left arm was in a sling.

Cash was a passenger in a vehicle that was stopped for a traffic violation. He declined to be searched. While it is undisputed that Cash possessed a gun, the parties dispute whether some of the force used was before or after a gun was seen, as well as whether Cash was engaged in violent behavior or posed an immediate threat to the safety of the officer at the point that the allegedly excessive force was used. Cash indicates that after he declined to be searched, he was violently thrown to the ground. When he was punched and kicked, he was face down on the ground with

14

both arms underneath him and with his left arm in a sling. There are issues of fact regarding when the firearm was discovered. Finally, as to physical injury, while Cash's injuries were not serious, this does not imply "that the force has not been excessive, although the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality." *Sharrar*, 128 F.3d at 822.

Viewing the facts in the light most favorable to Cash, a jury could conclude that Defendants' use of force by slamming him to the ground and then punching him in the face and head (Deputy Bobak) and kneeing him in the head (Officer Mercer) while he was lying down with his arms, one of which was in a sling, beneath him, constitutes excessive force in violation of the Fourth Amendment. Therefore, Defendants are not entitled to judgment as a matter of law on this basis.

### 3. Qualified immunity

Defendants alternatively argue that it was not clearly established when the incident occurred that their conduct would violate Cash's constitutional rights, and therefore, they are entitled to qualified immunity. As Chief Judge Hornak noted in *Knight v. Bobanic*,

> [T]here is nothing inherently inconsistent about the Court concluding that there are meaningful factual disputes as to whether the [defendants] violated [plaintiff's] constitutional rights, which would normally dictate that this case proceed to trial, while at the same time concluding that some of the same facts are undisputed such that they conclusively demonstrate that the [defendants] are entitled to qualified immunity as a matter of law.

No. 15-cv-00820, 2019 WL 2151293, at *1 n.2 (W.D. Pa. May 17, 2019).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is an objective decision to be decided by the court as a matter of law. *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004). The burden of pleading a qualified immunity defense rests with the defendant, not the plaintiff. *Thomas v. Independence Township*, 463 F.3d 285, 293 (3d Cir. 2006). "When a defendant raises qualified immunity on summary judgment, the court must 'adop[t] . . . the plaintiff's version of the facts' unless "no reasonable jury could believe it." *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 259 (2014) (quoting *Scott*, 550 U.S. at 378–80).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). It is intended to shield officers who make "reasonable but mistaken judgments about open legal questions" and provides protection of "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft* at 743. The ultimate question is whether the state of the law when the offense occurred gave Defendants "fair warning" that their acts were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The court should look first to Supreme Court precedent. "Even if none exists, it may be possible that a 'robust consensus of cases of persuasive authority' in the Court[s] of Appeals could clearly establish a right for purposes of qualified immunity." *Mammaro v. New Jersey Div. Child*

*Protection & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)).

Defining the right at issue is critical to this inquiry. The court must frame the right "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted). But this does not mean that an official action is protected by qualified immunity unless that very action has been held unlawful. The Supreme Court has explained that "[a]lthough earlier cases involving fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding," *Hope*, 536 U.S. at 741, and that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.*

> The Third Circuit has explained that:
>
> [W]e are mindful that reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 . . . There must be "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

*City of Pittsburgh*, 975 F.3d at 342.

In Cash's recitation of the events in his Complaint and Declaration, which are taken as true, his claim regarding Officer Mercer relates to the knee strikes he delivered once Cash was on the ground. According to Officer Mercer's account of the incident, he grabbed Cash's right arm and yelled "stop, get on the ground." Another officer pushed Cash and Deputy Bobak tackled Cash. Although Cash claims in his brief in opposition to Defendants' motions for summary judgment

17

(which is not evidence) that Defendants "did not observe a firearm until after they brutalized him" (ECF No. 78 at 3), the fact that Officer Mercer heard someone yell "gun" as a struggle ensued is undisputed in the record.

As it pertains to Officer Mercer, the question then becomes whether it was clearly established on February 23, 2018, that the use of non-deadly force by a police officer to take control of an individual during a struggle with police officers under a reasonable belief that the individual possessed a firearm, thereby creating a substantial risk of bodily harm to others, was a violation of Cash's constitutional rights of which a reasonable person should have known. No such law was found to suggest that this was clearly established. Based upon the record evidence, Officer Mercer made a split-second decision that, under the circumstances, was reasonable even if mistaken as to the amount of force used. Based upon the state of the law at the time, it cannot be concluded that Officer Mercer knew that his conduct violated Cash's Fourth Amendment rights. Thus, as a matter of law, Officer Mercer is entitled to qualified immunity.

Turning to Deputy Bobak and again, viewing the facts in the light most favorable to Cash, the same result is not warranted. This is so because according to Cash's version of events, after he refused to consent to a search and *before* Deputy Bobak observed a firearm, Officer Bobak slammed him on the ground and began punching him. It was clearly established on February 23, 2018, that an allegedly "unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down." *City of Pittsburgh*, 975 F.3d at 340. As a result, Deputy Bobak is not entitled to qualified immunity with respect to Cash's § 1983 Fourth Amendment excessive force claim against him.

E. **<u>Conclusion</u>**

For these reasons, it is respectfully recommended that Defendant Mercer's motion for summary judgment (ECF No. 45) be granted and Defendant Bobak's motion for summary judgment (ECF No. 48) be denied.

### G. Notice

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by May 20, 2021. Any party opposing the objections shall file a response by June 3, 2021. Failure to file timely objections will waive the right of appeal.

Dated: May 6, 2021

s/ Patricia L Dodge<br>
PATRICIA L. DODGE<br>
United States Magistrate Judge